Thank you, Your Honor. May it please the Court. Just to give the Court, the Court's familiar with the briefing, obviously. There are a few issues with the facts I would like to flesh out this morning that I think might have some bearing as far as oral argument is concerned. As the Court knows, my client, Mr. Holmes, was convicted of arson. This would be from seven fires that were lit in a rural area in the state of Idaho. They were small fires. Between 50 and 200 acres were burned in each place. And these were largely in sort of a barren, sage, grassy desert area. And it's not typically what we might think of when we think of that sort of southwestern scenic area. This is very barren, very rural, highly grazed, perhaps overgrazed ground that one runs cattle out on. In the fires, there were some things that were destroyed. The only things that were destroyed was a series of fences. Excuse me. Excuse me, counsel. Yes. Let me ask you something a little more detailed. Sure. As I understand it, there's no conflict about the location being a place of public use. Well, Your Honor, I think there is. I think there is a conflict with that. At trial, I know that ---- I thought it was conceded that it was a place of public use. I don't believe that it was, Your Honor. And I look at this issue. There are two issues here I see. Under 2K41A1, there's the issue of whether this ground that burned up is a place of public use. If it, in fact, is not, we have to decide that it's something other than a public place of use, and it puts us into 2K1.4A2B, which is a level 20 alternative. What I'm trying to find out is where the fight is to be. Well ---- And let me lay it out for you. It looks to me as though there's really no issue on public use because the statute says at 2332E6 that a place of public use includes land accessible or open to members of the public. So I didn't think you had much chance of saying it wasn't a place of public use. And it looked to me as though the argument on 2K1.4A1 would be about destruction, your argument about the barrenness of the area. There are those of us who actually like barren areas. Well, I like barren areas, too. But was it destroyed? That's the question. But the question would be not about the term public use, which is a term of art defined in the statute, but about the term destruction. But it sounds from what you're saying as though I'm wrong, and the dispute really is about public use. It's about both areas, Your Honor. I'll address the former briefly, and then I'll address the latter, if that's where you think the heart of the argument lies. Just addressing the former, sentencing Mr. Lewis, who was trial counsel, and this is ---- you can find this in the record at 14 and 15. He conceded that the place was open to the public, but he never conceded. And, in fact, Judge Windmill mentioned this at sentencing. Okay. Let's assume for purposes of discussion that it's not conceded that it was a place of public use. I thought it was. But let's assume that it wasn't. So what? How do you get out of the statutory definition? Well, the statutory definition has two parts, Your Honor. And it is open to members of the public. You're absolutely right. 18 U.S.C.S. 2332 F.E. sub C states area of public use is any park that's open to members of the public. But there's an and in there, and it states and encompasses any commercial, historical, educational, religious, governmental, or recreational use. There's not one case ---- Recreational. I had my law clerk get me pictures of a whistle pick, and I guess there must be some people who think they're really cute or really worth shooting. Well, certainly, Your Honor. And I think that's the only use of this land. And if the court wishes to define it that broadly, then ---- Well, that's good news. I mean, there are those of us who like shooting at tin cans. Shooting at whistle pigs might be more fun. Well, I think what the statute really is asking, Your Honor, I think the statute is really talking about things like burning of barren ground of El Capitan or some area that has some cultural significance, Yellowstone Park. I don't think ---- It doesn't say ---- In my mind, it doesn't go to stage breaks. Actually, I am mystified as to why you are making your pitch on place of public use rather than destruction. Well, then I'll move on to destruction. But I think it's two parts. Okay. I understand you will not give up on place of public use, and that's an issue that you want us to consider. But what about destruction? Well, let's talk about the structure. There are a series of cases ---- Destruction. I didn't speak clearly. Destruction, not destruction. Yes. I'm sorry, Your Honor. There's a series of cases that deal with the application of this Guidelines. Basically, the only case I could ---- Are there any cases that speak to whether bare land is destructible for purposes of the 24 rather than the 20? Not a single, Your Honor. And the only case that I could find, and it's an unpublished case, would be U.S. v. Big Leggings. And that stated that, in fact, the burning of a vacant building, an abandoned building on ground, was a dwelling for the purposes of this statute. As far as barren ground is concerned, absolutely not. And the way, of course, that the Court found its way to move up to that level 24 and to say that the ground had been destroyed was to introduce its own evidence. Well, ground is never destroyed, right? So if you have land that is a place of public use, then destruction of land must mean something other than the fact that the land is still out there, even after the whatever has happened has happened. And so if you blow up a bomb on land, the land is still there. So are you saying that there can never be destruction of a place of public use when the place of public use is land? I think what I'm saying, Your Honor, in this case, there was no evidence that that land was ever destroyed. I don't think the land is still there when you go out and look at it. But obviously, all of the vegetation on it burned up. That was the finding that the district court made. So why isn't that destruction? How can I differentiate that? Do you say there has to be a structure on it, or is it that a tree is different than other sorts of vegetation? The land remains usable. The recreational purposes that those parts – Really, there was no introduction of any evidence that it was being used for any recreational purpose other than a minor amount of hunting. If there's a forest and that is burned, would that be a destruction of the land? Because the land is still there, and new trees can grow. I think in certain instances that's the case, but I don't think any evidence was ever introduced that the land was destroyed. That's the problem here. Was there any evidence about whether those whistlepigs are still scurrying around? They may be. I don't know. I mean, that matters. If it's used for hunting whistlepigs, it matters whether the whistlepigs were all dead. And that's the question. There was no evidence that was introduced of this. As you read the record, you get to the very end, and you really don't know whether it was destroyed or not. I could analogize this. If you dropped an atomic bomb on a piece of ground and there was this radioactive material that remained after the fact, the land might be destroyed, but here it was never introduced. Let me ask you this. Is this a legal issue in your view? Is this a legal issue whether land can be destroyed by having a fire go through it, or is it a factual issue? What is our standard of review here for what the district court concluded? Well, I think your standard of review is obviously in dull. It's clear procedural error needs to be made. But I guess there was no factual determination of any kind that was made in this case, and that's the problem. Well, the district court found there was destruction of land, so are we reviewing that for an abuse of discretion? Absolutely, Your Honor. But I have to note here the district court's finding that the land was destroyed was not a result of any of the evidence that was introduced by the parties. The district court simply had a trial going on in another courtroom where the cheatgrass cycle was at issue in that ground, not this ground. But it was at issue in that ground, and the court said very often when there's a forest fire, cheatgrass comes in. It infests the ground. It destroys it. It destroys valuable wildlife habitat, et cetera, et cetera. But the United States never introduced any of that evidence. You've got about a minute left. Do you want to say anything about it? Yes, Your Honor. Okay. We'll hear from the government. May it please the Court. My name is Serena Case Hargrove, and I'm with the United States District of Idaho United States Attorney's Office. First, I'd like to make it clear that on ER page 27, the defendant did concede the question of a place of public use. He said, thank you, Judge, yeah, and like I said, I don't disagree that it's a place of public use. Obviously, it's open to the public, but it just seems that paragraph 2 would be more accurate that it endangered a place of public use. And then he proceeded to argue endangered. It's an interesting question whether land can be destroyed. Let me ask you about the guideline on destruction. When I read 2K1.4A1, it doesn't just say destruction or attempted destruction of a place of public use. It says destruction or attempted destruction of a dwelling, an airport, an aircraft, a mass transportation facility, a mass transportation vehicle, a maritime facility, a vessel or a vessel's cargo, a public transportation system, a state of government facility, an infrastructure facility, or a place of public use. When construing catch-all language at the end of a list, usually the doctrine of construing it a eustem generis is used, or nos catoris ocades. In other words, just saying, well, they must have meant something like the other things that they list with more specificity. When I look at the things that they list with more specificity, those are big, important structures that cost typically millions of dollars, where a fire has a very high likelihood of killing a lot of people and causing an enormous burden upon the public. Not at all like a grass fire in a vacant area where it's not likely to spread to old Hollywood dwellings or something like that. It looks like what they meant to do is max people out at a 24 if they blow up JFK Terminal rather than if they set a grass fire in some barren land in Montana. And I'm inclined to think that place of public use means similar place of public use. What am I missing there? Well, Your Honor, if this guideline stood on its own, that would be a better argument. The fact there is the guideline incorporates a definition from the statute, and that's 18 U.S.C. Section 2332f. I agree with you. And I think there's no question that it's a place of public use. What's more, I think you're right that it was conceded and your opponent was just mistaken. However, that leaves open the word destruction or attempted destruction. Some things are destructible, like, for example, an aircraft or an airport. Some things are relatively indestructible. Sure, they can be damaged. If you're somebody that likes to plink away at whistlepigs with a .22, this bare land can be damaged. But it can't be destroyed the way these other things in the guideline list can be. So how can you destroy or attempt to destroy something that is, compared to the other things, indestructible? Your Honor, I've thought about this a lot, and I've been thinking about the beaches on the Gulf Coast. They will always be beaches. If oil washes ashore, there will still be a beach there. The question will be is, is that beach destroyed? In one sense, it's not.  It's a beach. In another sense, though, it is. It's not habitat in the same way that it was. No one would enjoy going to that beach when it's coated with oil. And so if you take destruction to mean to ruin or to spoil, that beach would certainly be spoiled. That is a very good analogy. Now, I think I agree with you. Even nothing but sand can be destroyed. Can this fire destroy this grassland the same way? Absolutely, Your Honor. Calling this barren land is really, it doesn't do it justice. This is BLM land. We know from the record, I've combed the record. People have different tastes. I really like the Black Rock Desert in Nevada. A lot of people think it's barren. Well, and Sagebrush Steppe is an extremely important part of Idaho's landscape. And we know that there were very old sagebrush plants on parts of this land. This was a big area. It's 1,200 acres total that were burned, a little more than that. So parts of it had very old sagebrush on it, we know from the record. Parts of it just had weeds on it. Parts of it had grasses. Some of those were probably native grasses and some of them probably weren't. We know, though, that people from the record, and as I said, I combed the record, there's evidence in the record that many people used the area. It was a high-traffic area for ATVs, bikes, and other wheeled vehicles. Can they still use it that way? Well, certainly, Your Honor. It looked to me like there are two uses. One is people passing over it for recreational purposes, and one is plinking away at whistlepigs. And did the fire, was the fire an attempt to destroy the land for its utility in either of those uses? I don't think it has to have been an attempt to do that. The question is whether it did that. Okay. Either one will do. Yes. And yes, Your Honor, I would, in the same way that you can still walk along a beach that's coated with oil, sure, you can walk along a beach coated with oil, but no one's going to want to do that. I didn't see any pictures in here. Was there some evidence that it's really ugly now compared to what it was? Well, it was burned to the ground, and the sagebrush plants, some of which were 100 years old, are gone. They were decimated. The grass is decimated. You know, yes, it's a black, parched area. And there were pictures. They're not, unfortunately, in the executive record, but there were photos before the district court that the district court considered. Do we know whether it comes back? Vegetation grows back. I mean, sometimes you need fires, in fact, to clear brush so vegetation will grow. I'm not saying this is kind of fire, but fire is not exactly like a nuclear attack, right? It's a common occurrence in nature, and in some sense, it's part of the cycle of nature. So is there any evidence as to whether the brush will grow back? Yes, Your Honor. You're right that fire is a natural occurrence. And on sagebrush steppe, historically, it occurred every 30 to 70 years. This is ‑‑ I'm stepping a little outside the record here, although I think this is common knowledge in Idaho. The problem is with the introduction of invasive species like cheatgrass, which is the most common invasive species in the West and in Idaho, the fire cycle speeds up dramatically. And so instead of going ‑‑ But here we are going way outside the record. Pardon? Here we are. I mean, now you are going way outside the record. This is ‑‑ so the judge saying this is what I know in another case. I mean, I don't know if it's true. You tell me it's a case, and everybody in Idaho knows, but I'm not from Idaho, and I don't know. I would make a distinction. Judge Winrel did refer to a case that he was dealing with, the Oust case, in which they were trying to spray cheatgrass and other weed‑infested lands to keep it from spreading because it is such a problem. He also, though, referred to his extensive experience in Idaho and referred to the cheatgrass cycle, which is a well‑understood and well‑known cycle in Idaho. So it is true, though, that the government had not introduced specific evidence in the record in this case of that cycle, and that is true. But I do think it's fairly common knowledge. I mean, any way we answer the question, we're not going to. It's a fairly discrete, factual question. The question is, if you burn down the grass, does it come back, or would it be replaced by an invasive species so it doesn't come back? You know, it gets permanently changed because the invasive species now have a chance to take over. Right. That does not strike me as a kind of fact you could just pull out of thin air. I mean, I don't know. I mean, I have every confidence in Judge Windmill. I know he's quite knowledgeable, certainly from Idaho. But I'm just wondering, is this a kind of fact that we can take as... If this is a necessary part of your argument, isn't this the kind of thing that we need to remand for some factual, some evidence? You certainly could, Your Honor, although I would like to point out, there is evidence from the Rod and Gun Club. They did choose to reseed their land. They had sagebrush that was burned down. Sagebrush is extremely hard to reseed. They can't manufacture the seeds commercially, and it costs a tremendous amount to reseed. So just for the small area of land for the Gun Club, reseeding it for the sagebrush costs $12,000. That is on the record. And I think it goes to the fact that if the opposite of destruction... Just to make it clear, there was nothing else. It wasn't clear to me, maybe this is quite clear on the record, but the Gun Club did not have any structures or anything that were destroyed. It was all sagebrush, right? There were some target – targets that were destroyed, I believe, but the building and so on was not destroyed. Man-made targets. Pardon? Man-made targets, yes. I see. And are you counting on those? Are you... Your Honor, that's a place of private use, and so we're not arguing that when we're arguing for the enhancement based on the destruction or endangerment of a place of public use. That's a private use because it's a gun club. Right. It's a private club. It's not a public one. So when we talk about destruction of land, putting those pieces of the statute and the case law together, how would you ask us to determine that? What constitutes destruction of land, which, of course, will always be there? Yes, Your Honor. Destruction has several different definitions. I looked them up. And at an extreme, it can be to decimate, to destroy completely. At a less extreme, it can be to ruin or to spoil. And endanger means to expose to danger or to imperil. So I would say destruction implies some change. And it implies a large change to just total annihilation, if you will. And it encompasses that broad swath. Whereas endangerment means you're putting something, you're teetering, something's teetering on the edge of change. Here he clearly endangered all the land around the burned areas. They were in danger of being burned. But he actually ruined and spoiled for hunting, for hiking, for shooting, certainly for habitat, for animals, the land that he did burn to the ground. What's the evidence that it was spoiled for hunting and hiking? I mean, we have millions of acres subject to forest fires from lightning every year in Alaska. And, gosh, I've hiked in that land. It gets a forest fire, and then the next year it's not burning anymore. You hike around. There's a lot of burned out black spruce, and there's new stuff coming up. Sometimes it's easier. You don't have to deal with that sagebrush. Well, and, you know, the record is rather spare on this. I would just say I think it can be inferred, as with the beach, you can still walk along the beach that's covered with oil, but do you want to? Well, no, I can't infer it. I'm asking if there's anything in the record to show it's spoiled for hiking and hunting. That's why I asked about the whistle pigs earlier. Right. No, Your Honor, there are, except that, like I said, you can infer that if habitat is gone, animals will go to. I don't know if I can infer it. A lot of times they just scurry off, and then they come back. Sometimes they can't. And I don't know which it is. I really like your argument that you could spoil a beach with oil, just like you could spoil an Oriental rug even by pouring a bottle of ink on it, even though the rug is still there and it keeps your feet warm. Although that, too, has its limits. You know, if you walk down to Santa Barbara, you're probably too young to remember the Santa Barbara spill, but you probably read it in history. But I remember it, and you couldn't walk on the beaches. Now, today, you walk on the beaches. And I've recently been to Prince William Sound, and you could have no idea there was an excellent Valdez. So even oil spills are not permanent. It's a little strange that they talk about destruction and talk about damage, and destruction has such a connotation of completeness and finality that it's almost hard to find in the cycle of nature. I would agree that destruction is not a term we would typically use with respect to land. However... Would you get back to Jess Kleinfeld's question about... What was that Latin term he used? Adjusum generis? Adjusum generis. That's the one. I can never pronounce it right. It's really not like those things listed. I mean, you can destroy an airplane. You can destroy a hangar or a building or a terminal. You can destroy a library. God forbid you could destroy this courthouse. But it's much harder to think of it in that terms of destroying some land that has vegetation on it. Isn't it really out of the... It is different, but again, I think destruction implies a change, an alteration. And endangerment just doesn't. Here he clearly endangered a lot of land, but he really did more than endanger it. And this is the guideline that applies to arson. Everyone agreed on that below, and it is the guideline that applies to arson. I looked it up. And so given that you've got a choice between those two... It's more than change. Destruction isn't just any change. That's right, Your Honor. I can cut down a couple dozen aspen, in my view, to clear out my view. But I haven't destroyed the land where that aspen is. I've got hundreds more. Have you endangered it? Or you could trim them. You could say, oh, that tree is sort of there in my view, and what I'm going to do is trim a bunch of branches, which we all do on our property for safety reasons and the like. And you know what? The trees come back. Every couple of years we have to spend a lot of money having people trim the trees back. So it doesn't really quite apply to... Well, Your Honor, I would say two things. One is that the guideline does not require permanent destruction. So temporary destruction, as you described with the beach, the beach will eventually return to normal. Isn't that an oxymoron, temporary destruction? No, I think temporary spoiling. If you replace the word destruction with spoiling or ruining... I can understand damage being temporary or partial. Like if you have an airplane sitting on a tarmac, and let's say you go and you puncture a tire. You've clearly damaged the airplane. It can't take off because the punctured tire can't run down the runway. But it can easily be repaired, and then it's still a plane, right? It's not destruction of a plane. Right. I would agree. I would agree with that, Your Honor. I would point out, though, that in choosing between endangerment and destruction, which is the choice the district court was faced with, clearly something more happened to this land than endangerment. And the district court concluded that, in fact,  was a decision that was made by the district court. And I think that's what the district court was faced with.  I think that's what the district court was faced with. And I think that it was destruction. I think in the meaning, taking destruction to mean ruining or spoiling completely, not taking to mean complete obliteration. It's a bit of a square peg in a round hole, but that's what the district court was faced with. Okay. Thank you. Thank you. You've got about a minute left. We'll give you an even minute. I just have one point here I want to make in my remaining minute to the court. I think the representation of an oil spill on the Gulf Coast is a little bit disingenuous from the fact that the record here doesn't reflect what destruction, if any, took place. Had Mr. Holmes been my client at the time of sentencing, I would have lacked the opportunity to challenge any evidence of any destruction of land to obtain the lesser guideline. Here we didn't have anything. The court had to draw from an outside trial on land that was unrelated to the land that actually burned up in the fire to come up with the conclusion that maybe the cheatgrass cycle had been initiated and the land was destroyed and plants wouldn't grow back. We don't know if anything grew back in this instance. We don't know what the state of this ground is today at all because that just never made its way into the record. As a result, I would ask that you remand. Thank you. The case is hired with 10 minutes.
judges: Kozinski, Kleinfeld, Ikuta